b GASKINS, J.
Jennifer Drane, a certified, but non-tenured school teacher, appeals the trial court’s judgment which sustained the Richland Parish School Board’s decision to terminate her employment. For the following reasons, we affirm.
FACTS AND PROCEDURAL BACKGROUND
Drane began teaching in August 1991 at Holly Ridge Elementary School in Rich-land Parish. On May 12, 1994, Principal Doyle E. Hammons gave her a handwritten notice that he was not recommending that she be rehired for the next school year due to “the preponderance of complaints relative to [her] treatment of students this year and the two previous years.” In response to her inquiry the principal stated she was being discharged for preventing a child from going on a field trip a year ago, for threatening to stick a pencil up part of a child’s anatomy if the student did not quit hitting the desk with the pencil, and for holding a child to allow another child to kick him. None of the principal’s complaints were documented in her personnel folder.
On May 13, 1994, the day after she received the notice of dismissal, the principal wrote a positive letter of recommendation for Drane to another school system. Hammons explained at his deposition that Drane was a good teacher, that he wanted her to have a job, that he did not want to destroy her career and that maybe she could get along better elsewhere.
Richland Parish School Superintendent Arlon Adams advised Drane in a May 25, 1994 letter that she would not be recommended for employment the next year. In a letter dated July 1, 1994, the new Superintendent Bonnie Adams listed a number of reasons for not employing Drane for the next year. In addition to the three reasons above, the letter stated that Drane (1) refused to comply with instructions to provide favorable seating for a hearing-impaired child, (2) told a first grade class they should all hit a student back if he hit someone, (3) specially hinvited certain parents to an awards ceremony and then gave awards to everyone in the class but their children, (4) had conflicts with other teachers and (5) demonstrated financial irresponsibility concerning the purchase of cheerleader outfits. The July 1 letter also informed Drane she was entitled to a hearing which Drane formally requested on July 8.
An administrative review board conducted the hearing on July 26 during which Drane learned that the old and new superintendents had met in early May with a *250 group of disgruntled parents who expressed concern about Drane and other teachers. The review board voted four to one to recommend that the superintendent terminate Drane. On August 2, 1994, the school board at its regular meeting voted unanimously that Drane not be rehired. Formal notice was mailed to Drane on August 3, 1994. Seeking damages for wrongful termination, Drane sued the school board, Superintendent Bonnie Adams and Principal Doyle E. Hammons.
REASONS FOR JUDGMENT
In written reasons the trial court observed that the probationary term for a teacher is three calendar years from date first hired, rather than three scholastic years. Under La. R.S. 17:442, a probationary teacher may be discharged by the school board upon written recommendation of the superintendent accompanied by “valid reasons.” Valid reasons were defined as sound and sufficient but not rising to the level required to dismiss a tenured teacher. Noting that state law does not require prior notice or hearing, the trial court found that Drane was given a hearing in compliance with the school board’s • own administrative procedures- by which a probationary teacher could request a hearing.
By all accounts Drane was a good classroom teacher. However, the trial court observed Drane was terminated due to her inability to get along with other l.qteachers and parents and her improper treatment of students. The trial court stated that Drane had conflicts with five of the fourteen other teachers at the school. She also had conflicts with parents and, at' times, acted and spoke inappropriately toward students. The trial court concluded that the remediation provisions of La. R.S. 17:391.5 did not apply for a discharge for reasons other than classroom incompetence. Reasons for dismissing a probationary teacher are discretionary with the school board. Courts will not interfere absent an abuse of that discretion. The trial court concluded that the board had valid, sound and sufficient reasons for not rehiring Drane and dismissed Drane’s action.
APPLICABLE LAW AND POLICY
In pertinent part, La. R.S. 17:442 provides:
Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.
Repealed effective June 22, 1994, La. R.S. 17:391.5(C) directed that:
No later than August 15, 1978, each school board shall adopt a system of personnel evaluation and assessment based on the guidelines submitted by the superintendent of education. Evaluation and assessment of the performance of each certified employee shall be made on a continuing basis, at least once each year for probationary personnel, and at least every third year for personnel with permanent status. The evaluation shall consist of an appraisement of the performance of the employee in the extension of teaching duties and responsibilities. In the event an employee is considered not performing his duties in a satisfactory manner then the employing authority shall notify the employee in writing of such determination and describe such nonperformance. The employing authority shall thereafter confer with the employee making specific recommendations as to areas of considered unsatisfactory performance of the employee and assist him to correct such considered deficiencies within a prescribed period of time. - Assistance may include but not be limited to in-service training *251 programs or such other appropriate programs.
The board’s policy provided:
| «SEPARATION OF PROFESSIONAL STAFF MEMBERS
It shall be the policy of the School Board to strive to assist personnel in every way possible to adjust to their positions and to perform their duties satisfactorily. Every reasonable effort shall be made to avoid the necessity of dismissing personnel at any level.
[[Image here]]
During the probationary term of an employee of the school district, this Board may dismiss an employee upon the written recommendation of the Superintendent, said recommendation to include valid reason for the dismissal.
DISCUSSION
Upon written recommendation, any probationary teacher may be discharged for valid reasons. La. R.S. 17:442. Dismissals of probationary teachers are entrusted to the sound discretion of the school board. Unless the teacher can show that the board abused that discretion, the courts will not interfere. Moreover, the board’s discretion to discharge probationary teachers for valid reasons serves the purpose of weeding out personnel whose attitude and performance, while not as faulty as deficiencies required to discharge a tenured teacher, indicate that it is undesirable for reasons of efficiency or harmony to grant them permanent status as tenured teachers. McKenzie v. Webster Parish School Board, 26,713 (La.App.2d Cir.4/5/95), 658 So.2d 215, writ denied, 95-1415 (La.9/22/95), 660 So.2d 472.
La. R.S. 17:391.5(C) required the board to adopt a personnel evaluation policy, evaluate certified teachers at least once a year, give written notice of unsatisfactory performance and have conferences and recommendations to correct deficiencies. In Drane’s view, the statute applied to probationary teachers. Drane contends the trial court erred in finding that the statute applied only to dismissals based on classroom incompetence and that a probationary teacher can be dismissed at the discretion of the board for valid reasons. Citing Williams v. Concordia Parish School Board, 95-980 (La.App. 3d Cir.1/31/96), 670 So.2d 351, writ denied, 96-0556 (La.4/19/96), 671 So.2d 921, the board argued it was not | ^required to comply with the remediation statute when it sought to discharge a teacher on a ground other than incompetence. In Williams, supra, a tenured teacher was discharged for incompetence and willful neglect of duty. On appeal Williams contended the board had failed to offer remediation under La. R.S. 17:391.5. When a teacher is discharged for willful neglect of duty, the fact that another charge, incompetence, was procedurally defective did not nullify the discharge. Although a probationary teacher was discharged in McKenzie v. Webster Parish School Board, supra, the board had substantially complied with its procedures and the law. McKenzie’s discharge was based on incompetence in the classroom.
Under La. R.S. 17:391.5, the school board was free to construct an evaluation and assessment policy based upon the broad parameters of the statute. The school board had great discretion in fashioning, adopting and implementing its own local procedure. In determining whether a school board complied with its own local policy, the courts apply substantial compliance as the standard of review. McKenzie v. Webster Parish School Board, supra. In Richland Parish, the school board’s policy dictated that every reasonable effort be made to avoid dismissing school personnel.
While the complaints against Drane did not all occur in the last school year, they do show a continuing pattern of poor judgment and disregard for her principal, her fellow teachers, and her student’s parents. One complaint addressed Drane’s threatening a child that if he didn’t stop tapping *252 a pencil on his desk, that she would “shove it up his b_” Drane testified that she had sent an apology to the child’s mother, although the mother stated that she had never received one. Another complaint centered on Drane holding down one child and allowing another to kick him, even though the principal had previously resolved the conflict | ^between the children. Drane also refused to let a first grader go on a field trip to a Christmas tree farm since the child had not finished some math work. In another matter, a parent had requested, and the principal instructed, that Drane place a hearing-impaired boy in the front of the classroom, which she refused to do, explaining later that the boy could hear her better as she moved about the room. Drane failed this child in reading but, when asked to re-add the grades, determined that the child had, in fact, passed. Drane had also intimated to parents that they needed to make a special effort to be at an awards day, and then their children did not receive an award. Additionally, Drane had a run-in with another teacher and was told to resolve her differences, which she refused to do. The last complaint addressed financial irresponsibility on Drane’s part. Drane had extended credit in a previous year to help parents afford cheerleader outfits, but in the current year, she extended a large amount, $1,600.00, and gave the parents a very generous nine months to pay, all without consulting with the principal. The record contained not only these complaints, but also examples of spiteful remarks made to co-workers that indicated Drane created an environment of disharmony.
The record showed that Drane brought much of her problems on herself through immaturity, stubbornness, and poor people skills. These deficiencies pertained to poor personal judgment, not poor scholastic performance. This is not the type of performance contemplated in La. R.S. 17:391.5(C), which could be corrected by some type of training program. Hence, this now-repealed provision did not apply to the complaints made against Drane. The standard which applied to probationary teachers under La. R.S. 17:442 mandated that the board have valid reasons to discharge Drane. The complaints showed a pattern of poor judgment and disharmonious relationships, which constituted valid reasons for her termination.
|7The school board’s policy dictated that it strive to assist personnel in every way possible and make every reasonable effort to avoid the necessity of dismissing personnel. The principal testified that he had conferences with and reprimanded Drane about every incident. While a written record would have been preferable, these many consultations with Drane certainly met the requirements of the board’s policy.
The trial court’s determination that the board had valid, sound and sufficient reasons for not rehiring Drane was not manifestly erroneous and is hereby affirmed.
DECREE
The judgment of the trial court is affirmed. Costs are assessed against the appellant, Jennifer Drane.
AFFIRMED.
DREW, J., dissents with written reasons.